J-S09026-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DAVID CLAPPER | : | |
| | : | |
| Appellant | : | No. 1059 WDA 2022 |

Appeal from the PCRA Order Entered August 9, 2022
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0013172-2009

BEFORE:  BENDER, P.J.E., BOWES, J., and SULLIVAN, J.

MEMORANDUM BY BOWES, J.:                    **FILED:  May 9, 2023**

David Clapper appeals from the August 9, 2022 order, which denied his petition filed pursuant to the Post Conviction Relief Act ("PCRA").  In that petition, Appellant averred that "the retroactive application to his case of increased and more burdensome reporting and registration requirements under [Subchapter I of the Sex Offender Registration and Notification Act ("SORNA")] violate[d] the *ex post facto* clause of the United States Constitution[.]"[1]  Amended PCRA Petition, 11/13/19, at 3.  Since our Supreme

---

[1] In its opinion explaining its decision, the PCRA court noted that Appellant had completed his sentence in March 2020.  Normally, this would render a petitioner ineligible for PCRA relief.  **See** 42 Pa.C.S. § 9543(a)(1)(i).  However, this Court has permitted defendants to challenge their sex offender registration requirements outside the parameters of the PCRA due to the "fact that the registration period does not begin until registrants are released from prison[.]"  **Commonwealth v. Duncan**, 237 A.3d 1171, 1174 (Pa.Super. 2020) (cleaned up).  **See also Commonwealth v. Lacombe**, 234 A.3d 602,

Court explicitly held in **Commonwealth v. Lacombe**, 234 A.3d 602, 605-06 (Pa. 2020), that, as it pertains to registrants like Appellant, "Subchapter I . . . does not violate the constitutional prohibition against *ex post facto* laws[,]" we affirm.

Appellant's case has had a lengthy history in this Court.[2] Briefly, on August 8, 2009, Appellant approached the victim in an alleyway, engaged her

_____

618 (Pa. 2020) (declining "to find the PCRA, or any other procedural mechanism, is the exclusive method for challenging sexual offender registration statutes"). For ease of discussion, we will refer to the petition as a PCRA petition even though, technically, it is not.

In that vein, our Supreme Court has explained Appellant's claim thusly:

> The prohibition of *ex post facto* laws appears in the United States Constitution in Article I, [§] 9, which is a limitation on Congress' authority to pass laws, and in Article I, [§] 10, which is a limitation on the power of the states. Article I, [§] 9 provides: "No Bill of Attainder or ex post facto Law shall be passed." U.S. CONST. art. I, § 9. Article I, [§] 10 similarly provides: "No State shall . . . pass any Bill of Attainder, *ex post facto* Law, or Law impairing the Obligation of Contracts, or grant any Title of Nobility." U.S. CONST. art. I, § 10.
>
> Pennsylvania's *ex post facto* provision is found in Article I, [§] 17 of our Constitution, which states that: "No *ex post facto* law, nor any law impairing the obligation of contracts, or making irrevocable any grant of special privileges or immunities, shall be passed." PA. CONST. art I, § 17.

**Lacombe**, **supra** at 606 n.2.

[2] The PCRA court has also had a lengthy history with this case. **See** PCRA Court Order, 8/1/22, at 1 ("I have been a common pleas judge since November 2008. [Appellant] has been along for the entire trip. His case history makes me think of the first words of a song from the British rock group, The Beatles, - 'The Long and Winding Road.'" (cleaned up)).

in conversation, grabbed her, and then "placed his hands down her pants and penetrated her vagina with his fingers before she was able to break his embrace and run away." *Commonwealth v. Clapper* ("*Clapper IV*"), 181 A.3d 459 (Pa.Super. 2017) (unpublished memorandum at 2) (cleaned up). Appellant was charged with one count each of unlawful restraint, aggravated indecent assault, indecent assault, and simple assault. Appellant conceded his guilt as to indecent assault and simple assault. Following a nonjury trial, the court convicted Appellant of aggravated indecent assault and acquitted him of unlawful restraint. On January 12, 2012, the court sentenced Appellant to an aggregate term of two to four years of imprisonment followed by seven years of probation. As will be detailed *infra*, Appellant was also required to register for life as a sex offender upon his release from prison.

Thereafter, Appellant sought relief from this Court, our Supreme Court, and the PCRA court. On direct appeal, we affirmed Appellant's judgment of sentence and our Supreme Court denied his petition for allowance of appeal. *See Commonwealth v. Clapper* ("*Clapper I*"), 63 A.3d 839 (Pa.Super. 2012) (unpublished memorandum), *appeal denied*, 67 A.3d 793 (Pa. 2013). The PCRA court dismissed Appellant's first PCRA petition without a hearing. On appeal, we remanded for an evidentiary hearing. *See Commonwealth v. Clapper* ("*Clapper II*"), 116 A.3d 693 (Pa.Super. 2014) (unpublished memorandum). Following remand, the PCRA court dismissed Appellant's PCRA petition, we affirmed that decision, and our High Court declined review.

*See Commonwealth v. Clapper* ("*Clapper III*"), 159 A.3d 1001 (Pa.Super. 2016) (unpublished memorandum), *appeal denied*, 169 A.3d 1041 (Pa. 2017).

Meanwhile, on March 18, 2015, Appellant's probation had begun and, with it, the mandate that he comply with his sex offender registration requirements.  At this point, we take a brief detour to better understand the registration requirements applicable to Appellant.

At the time Appellant was sentenced in 2012, he was deemed subject to lifetime registration pursuant to Megan's Law III.  However, because he was incarcerated, his registration requirements did not actually begin until 2015.  Between his sentencing and the onset of his duty to comply with the registration requirements, our legislature replaced Megan's Law III with Megan's Law IV, more commonly known SORNA.  *Commonwealth v. Derhammer*, 173 A.3d 723, 725 (Pa. 2017).  Also in the interim, our Supreme Court held that Megan's Law III was unconstitutional in its entirety because its enactment had violated the Pennsylvania Constitution's single-subject rule. *See Commonwealth v. Neiman*, 84 A.3d 603 (Pa. 2013).  Our High Court stayed its decision "to provide a reasonable amount of time for the General Assembly to consider appropriate remedial measures, or to allow for a smooth transition period" for those registrants, like Appellant, whose offenses had been committed during the time Megan's Law III was in effect.  *See Neiman*, *supra* at 616.  The legislature responded by modifying SORNA "to clarify that persons who were required to register with the state police at any time before

SORNA's effective date, and whose registration period had not expired, were still obligated to register with the state police as provided in Section 9799.15[.]" ***Derhammer***, ***supra*** at 726. Thus, although Appellant was initially sentenced pursuant to Megan's Law III, his registration requirements upon release were imposed pursuant to SORNA.

Within one year of beginning his probation and being subject to SORNA's registration requirements, Appellant was found to have committed several technical violations, including being discharged from sex offender treatment for non-compliance and admitting to alcohol, marijuana, and cocaine usage. Following a violation of probation ("VOP") hearing, the VOP judge, who had also presided over the nonjury trial and PCRA proceedings, imposed punishment of two to four years in jail. Appellant challenged the discretionary aspects of that sentence on appeal. We affirmed. ***See Clapper IV***, ***supra***, *appeal denied*, 188 A.3d 1113 (Pa. 2018).

Meanwhile, in 2017, our Supreme Court held the retroactive application of SORNA upon defendants like Appellant, whose crimes had been committed before the passage of SORNA, was unconstitutional pursuant to the *ex post facto* clause of the Pennsylvania Constitution. ***See Commonwealth v. Muniz***, 164 A.3d 1189, 1193 (Pa. 2017); ***see also Commonwealth v. Hart***, 174 A.3d 660, 667 n.9 (Pa.Super. 2017) ("[T]he binding precedent emerging from ***Muniz*** is confined to the determination that SORNA's registration requirement is punishment that runs afoul of the *ex post facto* clause of the

Pennsylvania Constitution when applied retroactively."). In February 2018, our legislature overhauled SORNA in response to **Muniz**. Of relevance here, individuals whose offenses were committed "on or after April 22, 1996, but before December 20, 2012" fell under the new provisions of Subchapter I. **See** 42 Pa.C.S. § 9799.52(1). Thus, as of 2018, Appellant has been required to register pursuant to Subchapter I.[3]

In June 2019, Appellant *pro se* filed the instant PCRA petition. The PCRA court appointed counsel, who filed an amended petition arguing that "the retroactive application to his case of increased and more burdensome reporting and registration requirements under SORNA violates the *ex post facto* clause of the United States Constitution" pursuant to **Muniz**, **supra**. **See** Amended PCRA Petition, 11/13/19, at 3. The PCRA court stayed the proceedings pending our Supreme Court's decision in **Lacombe**, which the PCRA court ultimately found "extinguishe[d] any hope that [Appellant] would no longer have to report and register his sex offender status" based on our High Court's "conclusion that Subchapter I is nonpunitive and does not violate the constitutional prohibitions against *ex post facto* laws." PCRA Court Order, 8/1/22, at 3, 5 (cleaned up). The PCRA court filed notice of its intent to dismiss Appellant's petition without a hearing pursuant to Pa.R.Crim.P. 907.

---

[3] We note that SORNA and Subchapter I did not alter the length of Appellant's registration, which has always been for his lifetime. Rather, it is the retroactive application of Subchapter I's enhanced registration requirements that Appellant challenges.

Appellant filed a response objecting to the PCRA court's conclusion. Thereafter, the PCRA court denied Appellant's PCRA petition.

This timely appeal followed. The PCRA court did not order a Pa.R.A.P. 1925(b) concise statement and did not file a Rule 1925(a) opinion. Appellant raises a single issue for our review, namely, whether "[t]he PCRA court erred in denying relief because the retroactive application of SORNA's registration and reporting requirements on [Appellant] is a punishment which violates the *ex post facto* clauses of the United States Constitution and Pennsylvania Constitution." Appellant's brief at 4. As Appellant raises a question of law, our standard of review is *de novo* and our scope of review is plenary. **See Lacombe**, **supra** at 608.

Appellant argues that he is entitled to relief despite our Supreme Court's holding in **Lacombe** because "[t]he holding in **Lacombe** is wrong." Appellant's brief at 19. In **Lacombe**, our Supreme Court determined that Subchapter I did not constitute criminal punishment and, therefore, its retroactive application did not violate the constitutional prohibition against *ex post facto* laws.

> As the above **Kennedy v. Mendoza-Martinez**, 372 U.S. 144 (1963) analysis clearly reflects, Subchapter I effected significant changes from the original version of SORNA, retroactive application of which we found unconstitutional in **Muniz**. To summarize, we find three of the five factors weigh in favor of finding Subchapter I nonpunitive. Additionally, we give little weight to the fact Subchapter I promotes the traditional aims of punishment and give significant weight to the fact Subchapter I is narrowly tailored to its nonpunitive purpose of protecting the public. As we have not found the requisite "clearest proof"

- 7 -

Subchapter I is punitive, we may not "override legislative intent and transform what has been denominated a civil remedy into a criminal penalty[.]" ***Hudson v. United States***, 522 U.S. 93, 100 (1997), *quoting **United States v. Ward***, 448 U.S. 242, 249 (1980) (internal quotations omitted).

. . . .

We hold Subchapter I does not constitute criminal punishment, and the *ex post facto* claims forwarded by appellees necessarily fail. ***See Muniz***, ***supra*** at 1208 ("Our decision regarding violation of [the *ex post facto*] clause depends on a determination of whether SORNA's retroactive application to [Muniz] constitutes punishment.").

***Lacombe***, ***supra*** at 626–27 (citations altered).

Essentially, Appellant is asking us to ignore ***Lacombe***'s unambiguous holding that the application of Subchapter I to defendants like Appellant does not violate the constitutional prohibition against *ex post facto* laws and grant him relief. We cannot do that. ***See e.g. Commonwealth v. Prout***, 814 A.2d 693, 695 n.2 (Pa.Super. 2002) ("[W]e are constitutionally bound to follow decisions of the Pennsylvania Supreme Court"). Stated simply, the PCRA court did not err in dismissing Appellant's petition based upon the clear and binding precedent set forth ***Lacombe***. Accordingly, Appellant is not entitled to relief.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  5/9/2023